JFP:pac:ljc 6731/60 \pleading\673160Complaint.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIBERTY INSURANCE UNDERWRITERS, INC. | : | |
| VS. | : | C. A. NO. CA 07-242 ML |
| PAUL M. FINSTEIN | : | |

## COMPLAINT

## JURISDICTION AND PARTIES

1. This is an action for declaratory relief filed pursuant to 28 U.S.C. §2201 and in accordance with Rule 57, F.R.C.P. (declaratory judgments).

2. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

3. The plaintiff, Liberty Insurance Underwriters, Inc. ("Liberty"), is a New York corporation with its principal place of business located in the State of New York

4. The defendant, Paul M. Finstein ("Finstein"), is a resident of the State of Rhode Island and is an attorney licensed to practice law within the State of Rhode Island. His principal place of business is located in Warwick, Rhode Island.

5. The amount in controversy is sufficient to confer jurisdiction in the federal court.

## FACTUAL ALLEGATIONS

### I. Facts Relating to Underlying Case.

6. Finstein is an attorney practicing law in the City of Warwick.

7. Sometime after December 1, 1995, Theresa Hindle ("Hindle") retained Finstein to represent her in an automobile accident that had occurred on or about December 1, 1995.

8. On November 25, 1998, less than one week prior to the statute of limitations expiring, Finstein commenced a lawsuit in the Kent County Superior Court with respect to Hindle's automobile accident. That case was styled as *Theresa E. Hindle, et al v. Richard R. Rampino* (C.A. No. KC98-0978).

9. On November 25, 1998, less than one week prior to the statute of limitations expiring, Finstein commenced a lawsuit in the Kent County Superior Court with respect to Hindle's automobile accident. That case was styled as *Theresa E. Hindle, et al v. Richard R. Rampino* (C.A. No. KC98-0978).

10. On November 28, 1998, a constable, engaged by Finstein, attempted to serve the defendant Rampino at his last known address.

11. Finstein's constable was advised that Rampino had passed away "two years ago."

12. Finstein's constable provided Finstein the summons that he had attempted to serve upon Rampino with the notation that Rampino had since passed away and also provided Finstein with a copy of Rampino's death certificate indicating a date of death of May 8, 1997.

13. Finstein made no attempt to substitute either the estate of Rampino or Rampino's insurance company (as permitted under R.I.G.L. §27-7-2) as a party defendant.

14. Over the next several years, Hindle inquired of Finstein as to the status of her case, but was never advised that Rampino had passed away, and/or that Finstein had taken no further action to substitute his estate or his insurance carrier as a party defendant.

15. In fact, Finstein took no action whatsoever with respect to the case and, as a result, on April 15, 2004, the presiding justice of the superior court entered an order dismissing the case pursuant to R.I.G.L. §9-8-5 for lack of prosecution.

## II. <u>Facts Relating to Malpractice Case Against Finstein.</u>

16. On or about December 1, 2005, Finstein was notified by Attorney Thomas R. Ricci ("Ricci") that Hindle had retained his office with regard to the December 1, 1995 motor vehicle accident. Ricci requested that Finstein's entire file regarding the claim be sent to Ricci's office.

17. When Ricci did not receive a response to his initial correspondence of December 1, 2005, he sent a follow-up letter to Finstein on December 23, 2005 once again requesting Finstein's file regarding Hindle's December 1, 1995 automobile accident.

18. Sometime between December 23, 2005 and January 26, 2006, Finstein evidently delivered his file to Ricci.

19. On January 26, 2006, Ricci sent Finstein a letter notifying him that Hindle's accident case had been dismissed by Judge Rodgers on April 15, 2005 pursuant to the aforementioned statute. In that same correspondence, he requested that Finstein notify his insurance carrier.

20. Ricci wrote to Finstein once again on February 14, 2006 asking him to respond to his January 26, 2006 letter.

21. On October 13, 2006, Hindle commenced a lawsuit against Finstein in the Kent County Superior Court. Said case is styled as *Theresa Hindle v. Paul M. Finstein* (C.A. No. KC06-882). Finstein was served with the complaint on October 24, 2006.

22. The complaint filed by Hindle against Finstein alleges that Finstein's failure to prosecute Hindle's action was a failure to exercise reasonable care, skill and diligence in representing the plaintiff.

23. The complaint further alleges that as a proximate result of Finstein's failure to act properly, that Hindle has permanently and irrevocably lost her right of action in the personal injury action stemming from her December 1, 1995 motor vehicle accident.

24. The complaint goes on to state that Finstein's failure to prosecute Hindle's personal injury action constituted both a negligent act and a breach of contract obligation owed to Hindle.

25. On November 14, 2006, Finstein filed an answer to Hindle's complaint on his own behalf.

## III. <u>Facts Relating to Finstein Notifying Liberty of the Claim.</u>

26. From the date of Ricci's first letter to Finstein on December 1, 2005 up to and including the date Finstein answered Hindle's complaint against him on November 14, 2006, Finstein never notified Liberty of Hindle's claim against him.

27. Finstein's first notice to Liberty of Hindle's claim was sometime shortly after December 11, 2006 when Finstein completed his renewal application for the upcoming year's liability insurance. *(See ¶37 below.)*

28. It was not until January 7, 2007 that Finstein actually sent Liberty a copy of Hindle's complaint and his answer thereto.

## IV. <u>Facts Relating to Insurance Policies Issued to Finstein.</u>

29. Finstein had first applied for insurance coverage with Liberty on or about December 17, 2002.

30. In that application, Finstein was asked if he was aware of any circumstance, act, error, or omission that could result in a professional liability claim being made under the policy. In response to that inquiry, Finstein answered "no."

31. Relying in part on Finstein's December 17, 202 application, Liberty issued a lawyer's professional liability policy to Finstein for the period of December 20, 2002 to December 20, 2003 (policy #EJE-B71-195418-012).

32. On December 4, 2003, Finstein applied for a renewal of his professional liability insurance with Liberty. As part of the application process, Finstein was asked if he was aware of any incidents or circumstances that could result in a claim being filed against him. He responded "no."

33. Relying in part on Finstein's December 4, 2003 application, Liberty issued a lawyer's professional liability policy to Finstein for the period of December 20, 2003 to December 20, 2004 (policy #LPA195418-013).

34. On December 8, 2004, Finstein applied for a renewal of his professional liability insurance with Liberty. As part of the application process, Finstein was asked if he was aware of any incidents or circumstances that could result in a claim being filed against him. He responded "no."

35. Relying in part on Finstein's December 8, 2004 application, Liberty issued a lawyer's professional liability policy to Finstein for the period of December 20, 2004 to December 20, 2005 (policy #LPA195418-014).

36. On December 6, 2005, Finstein applied for a renewal of his professional liability insurance with Liberty. As part of the application process, Finstein was asked if he was aware of any incidents or circumstances that could result in a claim being filed against him. He responded "no."

37. Relying in part on Finstein's December 6, 2005 application, Liberty issued a lawyer's professional liability policy to Finstein for the period of December 20, 2005 to December 20, 2006 (policy #LPA195418-015).

38. On December 11, 2006, Finstein applied to for a renewal of his professional liability insurance with Liberty. As part of the application process, Finstein was asked if he was aware of any claims that had been filed against him. He responded "yes." He then went on to explain in the supplemental application that he had been served with a complaint on October 24, 2006 and that he had filed a response thereto and that the claim was predicated on his failure to properly effect service on the deceased defendant/estate which resulted in the dismissal of the court action.

39. The pertinent provisions of the professional liability policy in effect at all times material hereto are as follows:

- ***Definition of "Claim"*** *(page 2):*

  *2.* ***claim*** *means a demand received by* ***you*** *for money or services, including the service of suit or institution of arbitration proceedings against* ***you****, or a* ***disciplinary proceeding.***

- ***Definition of "Policy Period"*** *(page 3):*

  9. ***policy period*** *means the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any.*

- ***Exclusions*** *(page 5):*

  1. ***Known Claims or Circumstances****. This policy does not apply to any* ***claim*** *arising out of a* ***wrongful act*** *occurring prior to the* ***policy period*** *if, prior to the effective date of the first Lawyers Professional Liability Insurance Policy issued by* ***us*** *to the* ***named insured*** *and continuously renewed and maintained in effect to the inception of this* ***policy period:***

     a. ***you*** *gave notice to any prior insurer of any such* ***claim*** *or* ***wrongful act;***
     b. ***you*** *had a reasonable basis to believe that* ***you*** *had breached a professional duty, committed a* ***wrongful act****, violated a disciplinary rule, engaged in professional misconduct or to foresee that a* ***claim*** *would be made against* ***you****; or*
     c. *there is a prior policy or policies which provide insurance for such* ***wrongful act*** *or* ***claim****, unless the available limits of liability of such prior policy or policies are insufficient to pay any liability or* ***claim****, in which event this policy will be excess over any such prior coverage, subject to this policy's terms, limits of liability, exclusions and conditions.*

- ***Notice of Claims*** *(page 7):*

  1. ***Notice of Claims****.* ***You*** *must give* ***us*** *written notice of any* ***claim(s)*** *or potential* ***claim(s)*** *made against* ***you*** *as soon as practicable but not later than sixty (60) days after expiration of the* ***policy period*** *or an extended reporting period, if applicable. In the event suit is brought against* ***you, you*** *must immediately forward to* ***us*** *every demand,*

> *notice, summons, complaint or other process received directly or by* ***your*** *representatives. Written notice of any claim against* ***you****, as well as of each demand on or action against* ***us****, must be delivered to* ***us*** *addressed as follows:*
>
> > *Liberty Insurance Underwriters, Inc.*
> > *55 Water Street, 18th floor*
> > *New York, NY 10041*
> > *Attention: Claims Division*
>
> *All notices to* ***us*** *must be in writing. Notice given by or on behalf of* ***you****, or written notice by or on behalf of any claimant, to* ***our*** *agent shall be considered notice to* ***us****.*
>
> *Whenever coverage under this policy would be excluded, suspended or lost because of noncompliance with this sub-section entitled* ***Notice of Claims****,* ***we*** *agree to waive this exclusion, suspension or loss of coverage with respect to each of* ***you*** *who did not personally fail to comply with, personally participate in failing to comply with, or remain passive after learning about noncompliance with the requirements of this sub-section.*

- ***Application*** *(page 11):*

> *4.* ***Application****. By acceptance of this policy,* ***you*** *agree that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon such representations and that this policy embodies all agreements existing between* ***you*** *and* ***us****, or any of* ***our*** *agents, relating to this insurance.*

40. Finstein has made demand for coverage under his professional liability policy.

41. Liberty has denied and continues to deny coverage on the following bases:

(a) the policy in question is not intended to cover a claim that arises out of an original wrongful act that occurred prior to the policy period if, prior to the effective date of the first policy issued (in this case, December 20, 2002), Finstein had a reasonable basis to believe that he had committed a wrongful act or breached a professional duty.

(b) Finstein failed to give written notice of any claim or potential claim made against him "as soon as practicable."

(c) Finstein failed to disclose circumstances surrounding his representation of Hindle that he knew or should have known that could result in a claim being filed against him each time he filed an application for renewal of insurance coverage.

41. An actual controversy exists between the parties.

**PRAYER FOR RELIEF**

Wherefore, Liberty prays that:

A. This court interpret and construe the applicable insurance policies issued by Liberty to Finstein and make a binding declaration of the respective rights, duties and obligations of the parties.

B. This court issue a binding declaration that the plaintiff, Liberty, was not and is not obligated to provide liability coverage to the defendant, Finstein, relative to the claims of Hindle.

C. This court issue a binding declaration that the plaintiff, Liberty, is not obligated to defend nor indemnify Finstein with respect to the claims of Hindle.

D. This court afford any and all other relief as necessary under the circumstances.

E. This court award the plaintiff, Liberty, all costs and attorney's fees for the prosecution of this action.

PLAINTIFF, Liberty Insurance Underwriters, Inc.
By its Attorney,

Joseph F. Penza, Jr., Esq. #0607
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

Dated: June 29, 2007